## JOHNSON v. HUMMEL.

First Division.  Ketchikan.  May 19, 1925.

No. 817–KA.

I. **Trusts** ⬅➡33—**Partnership—Corporation Stock.**

Where stock in a corporation in which two partners are stockholders is placed in the name of one of the partners on a pooling arrangement with other stockholders, the holder of the stock holds as a trustee, and not as a partner.

2. **Injunction** ⬅➡21—**Against Stockholders at Time of Stockholders' Election.**

Where the claimant of corporation stock brings a suit for its recovery or control immediately before the election of corporation officers, and the effect of the control of the stock by the court will be to change the result of the election and control of the offices of the company, without allowing the stockholders sought to be restrained to be heard in their own defense, the injunction should be denied.

3. **Injunction** ⬅➡14, 137(4)—**Basis of Right.**

The basis of an injunction rests upon the principle of a clear and certain right to the enjoyment of the subject-matter in question, and an injurious interruption of that right, which on a just and equitable ground ought to be prevented. To warrant the allowance of the right, it must clearly appear that some act has been done or threatened which will produce irreparable injury to the plaintiff. It is well settled that, if the facts on which the right of injunction is based are in dispute, the injunction should be denied.

The plaintiff, by this action alleging an equal partnership existing between himself and the defendant, Henry Hummel, in 399 shares of stock in the Texas Creek Comstock Mining Company, issued by the company in the name of the defendant, seeks to have the alleged copartnership dissolved, a receiver appointed, and further that, pending final hearing, an injunction be

⬅➡See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

issued restraining defendant from selling, transferring, or voting the stock so alleged to be copartnership stock, at the annual meeting of the stockholders on May 25, 1925, and also to show cause why said stock should not be transferred to the plaintiff on or before said last-named date.

On the application of plaintiff, an order to show cause, returnable May 6th, was issued and a temporary restraining order pending the hearing on the order to show cause was entered on May 1st. On the day set for the hearing on the order to show cause, the plaintiff and defendant appeared, and each submitted an affidavit on the order to show cause at that time. At the conclusion of the hearing further time was granted for the submission of a copy of the minutes of the corporation for May and June, 1924. These minutes are now at hand, and I have considered the showing made by the parties in connection therewith.

In considering the affidavits in connection with the complaint of plaintiff, I am of the opinion that, under the undisputed facts disclosed by the affidavits, no copartnership existed between plaintiff and defendant in the stock, but that defendant is holding certain of the shares of stock in the corporation in trust for the defendant. The original copartnership agreement of July 27, 1923, set forth that the plaintiff and defendant were mining partners, and that they were the owners jointly of certain mining claims known as the Alaska Comstock, Fortuna, and Alaska groups in the Hyder mining district of Alaska, each owning a quarter interest therein. The agreement further provides that on the sale of the Comstock or Fortuna properties, of which the plaintiff and defendant were joint owners, the plaintiff should receive one-half of the net proceeds received by Hummel.

Plaintiff claims that when the stock was issued it was agreed that it be issued in the name of Hummel, who should hold the same in his name until the purchase of a certain interest from one John W. Frame was accomplished, and that, when the purchase was consummated, his share should be transferred to him by Hummel. He further sets forth that the purchase was accomplished in the fall of 1924, and that demand had been made on Hummel for plaintiff's share of the stock, but that Hummel had refused to transfer the same as agreed upon. Hummel admits that the defendant was a copartner with him in

the properties above mentioned, but denies that he and plaintiff were copartners in any other property which was afterwards transferred to the corporation. The excuse given by Hummel for not making the transfer of the stock which belonged to the plaintiff is that the stock was held by him under a pooling agreement entered into by the plaintiff with other stockholders for the period of one year, and that the year had not yet expired. The minutes of the corporation show that the pooling agreement was entered into on May 19, 1924, and had not expired at the date of the commencement of the action, or at the date of the hearing on the order to show cause. The partnership agreement of July 27, 1923, covered only the Alaska Comstock, Fortuna, and Alaska claims, and does not mention the Sunshine, Skookum, or Texas Creek groups, which appear from the minutes to have been transferred to the corporation, and an allotment of the shares of stock made thereof to Hummel.

Plaintiff claims that he has a half interest in these shares, and that there was allotted by the corporation to Hummel, for the Alaska Comstock, Fortuna, and Alaska claims, 400,000 shares of the capital stock, while Hummel claims that there was allotted to him, for the Alaska Comstock, Fortuna, and Alaska claims, 200,000 shares of capital stock, and for the Sunshine, Skookum, and Texas groups 200,000 shares, while the minutes show that 150,000 shares were allotted to Hummel for the Comstock, Fortuna, and Alaska groups, 100,000 shares for the Texas, and 149,000 for the Skookum and Sunshine groups; that there was also allotted to Harold Johnson 100,000 shares for his interest in the Skookum and Sunshine groups, to Joseph Jackson 200,000 shares for his interest in the Comstock, Fortuna, and Alaska groups, and to F. W. Fisher 100,000 shares, to Josephine Green 50,000 shares, and to J. K. Green 50,000 shares for their respective interests in the Jo-Jo, Alaska Comstock, and Fortuna claims.

The discrepancy between the allotment of shares as shown by the minutes and that shown by the affidavits of plaintiff and defendant is explained by the plaintiff, who in effect says that the true consideration for the 400,000 shares of stock was the Comstock, Alaska, and Fortuna claims, and the allotment was made, shown in the minutes, by defendant to forestall any attempt of Frame to obtain any interest in the property. The defendant further claims that, by reason of a joint purchase by

himself and Johnson of one-half of Johnson's interest in the
Comstock Alaska and Fortuna claims from one John W. Frame,
he (the defendant) became the owner of a five-eighths inter-
est in the partnership property, consisting of the Comstock
Alaska and Fortuna claims, and Johnson the owner of a three-
eighths interest only, which would be equivalent to 125,000
shares of the corporation to Hummel and to Johnson 75,000
shares of the corporation, by reason of the transfer of the last-
mentioned groups of claims; that of the 75,000 shares belong-
ing to Johnson the defendant had transferred to one Joe Green,
at Johnson's request, 10,000 shares in settlement of a debt due
Green; also that 1,000 shares had been transferred to Johnson
of the 200,000 shares allotted for the Comstock Alaska and
Fortuna group, to enable Johnson to become a director in the
corporation.

A. H. Zeigler, of Ketchikan, for plaintiff.
Lester Gore, of Ketchikan, for defendant.

REED, District Judge. A large portion of the affidavits of
the parties is taken up with charges and countercharges rela-
tive to the management of the corporation. With these charges
and the policy of the corporation, and who should become the
directors of the corporation, this court has nothing to do, so far
as disclosed by the pleadings. The only question before the
court at this time is: Who is entitled to vote the stock standing
in defendant's name on the books of the corporation? The
affidavits of both of the parties, in the face of the corporation
minutes, are so indefinite in the statement of facts that I am
unable to determine the rights of the parties by a preliminary
hearing, except that it clearly appears that the plaintiff is the
owner of at least 65,000 shares of stock standing in the name
of the defendant. The minutes of the corporation, showing
allotments made for the various claims, are presumably cor-
rect, and these minutes are, to a certain extent, corroborated by
the affidavit of the defendant.

This being so, I am of the opinion that an injunction pen-
dente lite, except as to the 65,000 shares, should be denied; this
especially so since the action was commenced a few days only
prior to the annual meeting of the corporation, when the ques-
tion of who should vote the stock would naturally come up.
Plaintiff had, according to his own statement, at least six

months prior to the bringing of the action, opportunity of having his rights as to any shares of stock held by the defendant finally determined. In Hilles v. Parrish, 14 N. J. Eq. 380, where a bill was filed, as this was, a few days before the election, to restrain certain stockholders from selling or assigning their stock, or voting upon it at the election, the court held that, inasmuch as the probable effect would be to change the result of election and control the offices of the company, without allowing the stockholders sought to be restrained to be heard in their own defense, the injunction should be denied.

The general rule with reference to preliminary injunctions is well settled that the power should be exercised with great caution, and should not be granted except in cases of urgent necessity. The basis of an injunction rests upon the principle of a clear and certain right to the enjoyment of the subject-matter in question, and an injurious interruption of that right, which, on a just and equitable ground, ought to be prevented. To warrant the allowance of the right, it must clearly appear that some act has been done or threatened, which will produce irreparable injury to the plaintiff. Here the facts are directly in dispute, and, as appears at present, the case is doubtful. It is well settled that, if the facts on which the right of injunction is based are in dispute, the injunction should be denied.

Under the circumstances, I am of the opinion that the defendant should not vote, at the annual election on the 25th of May, the 65,000 shares of stock held by him and admitted by him as belonging to the plaintiff. The plaintiff is therefore entitled to an injunction pendente lite, restraining the defendant from voting the 65,000 shares of stock standing in his name at the next annual meeting. The temporary restraining order will be dissolved, except as herein indicated.